ROLLMAN MFG. CO. v. UNIVERSAL HARDWARE WORKS.

(District Court, E. D. Pennsylvania. February 8, 1916.)

No. 633.

1. EQUITY ☞395—REFERENCE TO MASTER—POWERS OF MASTER.

A master, to whom a patent infringement suit was referred, had ample power, which he should not hesitate to use, to speed the cause and prevent unreasonable delay.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 854–856; Dec. Dig. ☞395.]

2. EQUITY ☞407—REFERENCE TO MASTER—REPORT—MATTERS TO BE INCLUDED.

While equity rule 51 (198 Fed. xxxii, 115 C. C. A. xxxii) does not specifically refer to proceedings before a master, the provision thereof that objections to evidence before an examiner or like officer shall be in short form, stating the grounds of objection relied upon, but that no transcript filed by such officer shall include argument or debate, the report of a master in a patent infringement suit should not be incumbered with unnecessary and voluminous statement, argument and debate having no proper place in the record, and the line should be drawn between such unnecessary matter and the statement of reasons for objections.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 893–900, 903; Dec. Dig. ☞407.]

**3. PATENTS ☞321—UNFAIR COMPETITION—IMPROPER USE OF DECREE.**

The plaintiff in a patent infringement suit may notify the defendant's customers of an interlocutory decree finding that defendant's cherry seeder infringes certain specified claims of plaintiff's patent, and warn them against buying or vending such infringed cherry seeder, and inform them of an intention to sue for damages, and propose terms of compromise of liability without litigation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec. Dig. ☞321.]

**4. PATENTS ☞321—UNFAIR COMPETITION—IMPROPER USE OF DECREE.**

Where circular letters sent out by the plaintiff in a patent infringement suit, in which an interlocutory decree was granted finding that defendant's cherry seeder infringed certain claims of plaintiff's patent, to defendant's customers, did not inform them of the limits of the interlocutory decree, or what patent was in suit, or what claims were infringed, nor in what respect defendant's seeder was held to infringe, but bore the inference that the interlocutory decree declared infringement against any or all cherry seeders manufactured by defendant, and that plaintiff was entitled to recover from defendant's customers profits made on sales of any or all seeders purchased from defendant, it was making an improper and unlawful use of the decree, entitling defendant to have it prohibited from making representations to defendant's customers concerning such decree, without stating its limits and effect, and definitely informing them of the character of infringement adjudged.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec. Dig. ☞321.]

**5. PATENTS ☞321—UNFAIR COMPETITION—IMPROPER USE OF DECREE.**

Where the plaintiff in a patent infringement suit was making an unfair use of an interlocutory decree finding infringement in certain respects in letters sent to defendant's customers, the court in which the suit was pending had authority on motion to control it in its use of such decree.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec. Dig. ☞321.]

In Equity. Suit by the Rollman Manufacturing Company against the Universal Hardware Works. On defendant's motion to suppress circular letters sent out by plaintiff. Order in conformity with the opinion granting a part of the relief sought.

See, also, 207 Fed. 97; 218 Fed. 651.

Coyle & Keller, of Lancaster, Pa., and Archibald Cox, of New York City, for plaintiff.

John A. Hipple, of Lancaster, Pa., and Wm. R. Davis, of New York City, for defendant.

THOMPSON, District Judge. The defendant moves for various forms of relief pertaining to the proceedings before the master. No substantial ground has been shown for interference at this time with the exercise of the master's discretion in the regulation of the proceedings before him under equity rule 60 et seq. (198 Fed. xxxvi, 115 C. C. A. xxxvi).

[1] At the hearing there were charges and countercharges of responsibility for delay. The master has ample power, which he should not hesitate to use, to speed the cause and prevent unreasonable delay. The length of time already consumed suggests the probability of ap-

preaching necessity for such action, or for a certification to the court of the reason why the plaintiff's case is not concluded.

[2] It may be well at this point to call the attention of the master and of counsel to the provisions of rule 51 (198 Fed. xxxii, 115 C. C. A. xxxii), providing that:

"Objections to the evidence, before an examiner or like officer, shall be in short form, stating the grounds of objection relied upon, but no transcript filed by such officer shall include argument or debate."

Reports are frequently returned to the court in which the notes of the proceedings before masters, examiners, and other officers are needlessly increased by many pages of statement, argument, and debate of counsel. While rule 51 does not specifically refer to proceedings before a master, the first paragraph, in relation to the form of objections to evidence, may be well taken to apply to any proceedings in which testimony is taken. No useful purpose is served by causing the record to be incumbered in this manner, and the line should be drawn between the statement of reasons for objections and the unnecessary and voluminous statement, argument, and debate which have no proper place in the record.

[3, 4] The question raised by the defendant's first motion is whether the circular letters sent out by the plaintiff on October 20, 1915, and the "follow-up" letters sent out on or about November 12, 1915, contain matter constituting an improper use of the interlocutory decree of the court and of its orders for production for inspection of the defendant's books and papers, and, if improper use has been made of the decree and order, whether the court has authority to control the plaintiff's action in sending out such letters.

It is not to be denied that the plaintiff may notify the defendant's customers of the decree finding that the cherry seeder manufactured by the defendant, which was offered in evidence before the court, infringed certain specified claims of the patent in suit, and may warn the defendant against buying or vending such infringing cherry seeders. And it is not to be denied that the plaintiff may lawfully inform a vendor of an intention to sue him for damages for the sale of the infringing article, and may propose terms of compromise of liability prior to litigation. Tuttle v. Matthews (C. C.) 28 Fed. 98; Philadelphia Trust Company v. Edison Electric Light Co., 65 Fed. 551, 13 C. C. A. 40.

The letters sent out by the plaintiff, however, did not inform the defendant's customers of the limits of the interlocutory decree—did not inform them what patent was in suit, nor what claims were held to be infringed, nor in what respect the defendant's cherry seeder was held to infringe. The defendant had contended upon the argument of various motions before the court that the master should have acted upon its offer to show the character of the cherry seeders made and sold by it after March 1, 1911, and should have thereupon determined whether they infringed.

In the opinion filed December 4, 1914, the court held that the plaintiff was not obliged to accept the statements and affidavits of the

defendant as to what character of cherry seeders it had manufactured and sold after March 1, 1911, but might, within the limits defined in the order of May 13, 1915, examine the books and papers of the defendant, and obtain information regarding the character of the cherry seeders from the defendant's customers.

The terms of the circular letters sent out bear the inference that the interlocutory decree declared infringement against any or all cherry seeders manufactured by the defendant, and that the plaintiff was entitled under that decree to recover from the defendant's customers profits made on sales of any or all cherry seeders purchased from it.

The plaintiff contends, first, that the purpose of the letters is to obtain the information to which it is entitled, in order that it may perfect its claim for profits; and, second, that it is within its rights in informing the defendant's customers of their liability to suit as infringers and in offering immunity from suit if they will give the information desired. The defendant contends that the plaintiff's purpose is to injure the defendant's business by alarming its customers with threats of litigation, and to obtain its business in the sale of cherry seeders.

The purpose of the plaintiff must be judged by its acts. The letters contain no false representation of the scope of the decree, but undoubtedly suppress information as to its effect and limits. In that respect the plaintiff must be held to have made an improper and unlawful use of the decree which prima facie would entitle the defendant to maintain a suit to protect it from injury to its trade. Dittgen v. Racine Paper Goods Co. (C. C.) 164 Fed. 84; Id., 171 Fed. 631, 96 C. C. A. 433; Adriance, Platt & Co. v. National Harrow Co., 121 Fed. 827, 58 C. C. A. 163.

[5] Under these circumstances, I am of the opinion that the court has authority, as was held in Asbestos Shingle Co. v. Johns-Manville Co. (C. C.) 189 Fed. 611, to control the plaintiff in its use of the interlocutory decree. In that case the court said:

"In view of all these facts I think the complainant should say expressly what are the limits of his rights as fixed by the decree. I will not ask him not to claim that his patent covers the defendant's shingles, for I do not think he is obliged to take the defendant's word for the fact that it sells no shingles made on a paper machine, and, besides, that is outside the scope of this suit altogether; but if he advertises the decree in connection with shingles he must make it clear that the only shingles which it purports to protect are those made on a paper-making machine."

The application here is not for punishment for contempt, nor does the question of preventing a multiplicity of suits arise, as in many of the cases in which the power to grant relief has been discussed. Inasmuch, however, as the letters disclose a purpose, in addition to that of obtaining the information necessary for the prosecution of the plaintiff's case, to unfairly affect the defendant's trade and to unfairly secure the business of its customers, an order will be entered prohibiting the plaintiff from making representations to the defendant's customers as to the interlocutory decree and the orders of the court without stating the limits and effect of the decree and orders, and without

definitely informing the defendant's customers of the character of infringement adjudged.

Counsel may prepare and submit an order in conformity with this opinion.